IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

—————————————————

NATHAN REWIS, #209 760                    *

     Petitioner,                              *

       v.                                   *           3:03-CV-666-MEF
                                                   (WO)

GWENDOLYN MOSLEY,                         *
WARDEN, *et al*.,
                               *

     Respondents.

—————————————————

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.  INTRODUCTION AND PROCEDURAL HISTORY

Nathan Rewis ["Rewis"], filed this  28 U.S.C. § 2254 petition for habeas corpus relief on June 20, 2003, challenging the convictions for first degree burglary and discharging a firearm into an occupied dwelling imposed upon him by the Circuit Court for Russell County, Alabama, on January 25, 2000.  The trial court sentenced Rewis on March 7, 2000 to life imprisonment on the first degree burglary conviction and twenty years' imprisonment on the firearm offense. The sentences were ordered to run consecutively.  (Doc. No. 7, Exhs. A, D.)

On July 5, 2000 the trial court held a hearing on Rewis's motion for new trial. Because trial counsel requested permission to withdraw from representation at Rewis's sentencing proceeding, counsel appointed to represent Rewis on appeal also represented him at the hearing on the motion for new trial. Trial counsel, Rewis, and Rewis's co-defendant,

Christopher Pratt, testified at the hearing. (Doc. No. 7, Exh. A, Vol. III, pgs. 267-381.)   The

trial court denied the motion for new trial by order filed July 5, 2000. (*Id.* at Vol. I, pg. 175.)

On appeal of his convictions, Petitioner presented the following claims for relief:

1.  Did the trial court violate the holding in *Brady v. Maryland*, 373 U.S. 83
(1963), when it denied Petitioner's motion for a new trial as a result of the
State's failure to disclose the full nature of the consideration given to
Petitioner's co-defendant (Christopher Pratt) in exchange for the co-
defendant's testimony; and

2.  Did the trial court err in denying Petitioner's motion for judgment of
acquittal where the evidence was insufficient to sustain a conviction for
discharging a firearm into an occupied dwelling.

The Alabama Court of Criminal Appeals affirmed Rewis's convictions by memorandum filed

March 16, 2001.  His application for rehearing was overruled on April 13, 2001. The

Alabama Supreme Court denied Rewis's petition for certiorari and issued a certificate of

judgment on June 29, 2001.  (Doc. No. 7, Exhs. B-H.)

On July 2, 2002 Rewis filed a state post-conviction petition pursuant to Rule 32,

*Alabama Rules of Criminal Procedure*. The trial court summarily dismissed the petition on

August 13, 2002. On appeal, the Alabama Court of Criminal Appeals affirmed the lower

court's decision in a memorandum filed February 21, 2003.  Rewis's application for

rehearing was overruled on March 14, 2003.  The Alabama Supreme Court denied his

petition for writ of certiorari on June 13, 2003. (Doc. No. 7, Exhs. I-P.)

In the instant application for habeas relief, Rewis presents the following issues:

1.  Officer Raymond Wells stole live rounds of ammunition from the evidence seized

during Petitioner's arrest;

2.  Officer Wells gave perjured testimony at Petitioner's preliminary hearing;

3.  Petitioner's arrest was illegal;

4.  Petitioner's sentence is excessive and disproportionate to the sentences imposed on his co-defendants;

5.  Other than the perjured testimony of a co-defendant, the State failed to produce corroborating evidence  to support Petitioner's convictions;

6.  The sentence imposed on Petitioner as an accomplice to discharging a firearm into an occupied dwelling exceeded and was disproportionate to the sentence imposed on the co-defendant who was the actual shooter;

7.  The evidence was insufficient to support Petitioner's convictions;

8.  The State improperly used the complicity statute, Ala. Code § 13A-2-23 to name him an accomplice to the crimes for which he was convicted;

9.  Petitioner is actually innocent;

10. The trial court subjected Petitioner to an excessive fine and sentence in violation of the Eighth Amendment; and

11. Petitioner received ineffective assistance of trial and appellate counsel.

## II.  DISCUSSION

*A.  Exhaustion of State Remedies*

Under *Rose v. Lundy*, 455 U.S. 509, 510 (1982), before a Petitioner may seek habeas relief in federal court, he must exhaust each claim presented to the federal court by pursuing remedies available in state court.  This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim.  *O'Sullivan v. Boerckel*, 526 U. S. 838 (1999); 28 U.S.C. §2254(b) and (c).  In Alabama, this may be accomplished by raising certain claims on direct appeal and by way of post-conviction proceedings.  Exhaustion is not required if, at the time a federal habeas corpus petition is filed, petitioner has no available state remedy.  *Teague v. Lane*, 489 U. S. 288, 297-98 (1989).  Petitioner's claims will be considered exhausted for the purposes of federal habeas review.

*B.  Disposition of Claims*

In their answer, as supplement, Respondents maintain that Rewis's claims numbered 1, 2, 3, 4, 6, 8, and 10  are procedurally defaulted because  they were not properly presented in the state courts.[1]  *See Harris v. Reed*, 489 U.S. 255 (1989); *Atkins v. Singletary*, 965 F.2d 952, 956 (11th Cir. 1992); *Teague v. Lane*, 489 U.S. 288 (1989). Respondents contend that Petitioner's claims challenging the sufficiency of the evidence used to convict him and his

---

[1]To the extent Rewis' allegation that Alabama's complicity statute was improperly used to name him as an accomplice to the crime (claim 8)  is essentially a challenge to the sufficiency of the evidence used to convict him of discharging a firearm into an occupied dwelling, this claim was raised and addressed on appeal. (*See* Doc. No. 7, Exh. D.)

allegations of ineffective assistance of counsel (claims numbered 5, 7, and 11) were properly adjudicated on the merits by the state courts.[2] *See Williams v. Taylor*, 529 U.S. 362, 404-05 (2000).   Respondents further assert that Petitioner's claim of actual innocence (claim numbered 9) is a mere allegation unsupported by facts sufficient to establish his innocence. (Doc. Nos. 7, 13, 19.)

Petitioner was provided an opportunity to file a response to the answer and supplemental answers of Respondents.  Petitioner responded to Respondents' original answer and supplemental answer.  (Doc. Nos. 11, 17).  Rewis did not respond to Respondents' October 3, 2005 supplemental answer. Upon review of the § 2254 petition, the answer and supplemental answers of Respondents and Petitioner's responses, the court concludes that no evidentiary hearing is required and that the petition is due to be denied in accordance with the provisions of Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*.

## C.  Standard of Review

To prevail on his § 2254 claims, Petitioner must show that a decision by the Alabama state courts was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an

---

[2]While it does not appear from the record that Rewis ever raised a specific challenge to the sufficiency of the evidence used to convict him of burglary in the first degree, Respondents have waived any procedural default argument by arguing that all of Petitioner's claims challenging the sufficiency of the evidence were properly adjudicated in the state courts. (Doc. No. 7, at pgs. 5-6.)

unreasonable determination of the facts, in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(1) & (2);[3] *see Williams v. Taylor*, 529 U.S. at 412-13. A state court's decision can be "contrary to" federal law either (1) if it fails to apply the correct controlling authority, or (2) if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a controlling case, but nonetheless reaches a different result. *Id*. at 405-06. A state court's decision can involve an "unreasonable application" of federal law if it either (1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Id*. at 407. "Federal habeas relief is available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively unreasonable.'" *Parker v. Head*, 244 F.3d 831 (11th Cir. 2001) (*citing Williams*, 529 U.S. at 409). It is the objective reasonableness, not the correctness *per se*, of the state court decision that this court must decide. *See Williams*, 529 U.S. at 411. Further, a state court's determinations of fact shall be "presumed to be correct," and the habeas

---

[3]28 U.S.C. § 2254(d) provides that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim adjudicated on the merits in State court proceedings unless the adjudication of the claim:

(1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or

(2) resulted in a decision based on an unreasonable determination of the facts, in light of the evidence presented in the State court proceedings.

petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "However, the statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact." *Parker*, 244 F.3d at 835 (*citing McBride v. Sharpe*, 25 F.3d 962, 971 (11th Cir. 1994)).

*D. The Sufficiency of the Evidence Claims.*

Petitioner maintains that the State produced insufficient evidence to sustain his convictions for first degree burglary and discharging a firearm into an occupied dwelling. The undersigned notes, as did the Alabama Court of Criminal Appeals in its opinion affirming the denial of Petitioner's Rule 32 petition, that "Rewis's [habeas] petition is riddled with numerous references to reasons why the evidence against him was allegedly insufficient to support his convictions." (*See* Doc. No. 7, Exh. N, pg. 2.)

The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is to determine whether the evidence could reasonably support a finding of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307 (1979).

> But this inquiry does not require a court to "ask itself whether <u>it</u> believes that the evidence at the trial established guilt beyond a reasonable doubt." ... [I]nstead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id*. at 318-319.

*i. The Firearm Offense*

-7-

On appeal, Rewis challenged the sufficiency of the evidence used to sustain his conviction for discharging a firearm into an occupied dwelling.  (Doc. No. 7, Exh. D.)  He argued that the act of shooting at a meter box attached to a house did  not establish an intent to shoot into the house. (*Id*.)   In the instant petition, Rewis argues that the State failed to prove him guilty of the firearm offense and that the State's entire case against him was based on the perjured and uncorroborated statements and testimony of co-defendant Christopher Pratt ["Pratt"].

In affirming Petitioner's conviction for discharging a firearm into an occupied dwelling, the Alabama Court of Criminal Appeals observed that the evidence presented at trial demonstrated that co-defendant Chad Wilson ["Wilson"] fired a .38 caliber pistol at a meter box attached to the personal residence of Jeffrey Bankston ["Bankston"] in an attempt to disrupt the power supply to the alarm system.  The appeals court determined that the State's evidence also established that Rewis shot at a transformer on a power pole located in Bankston's front yard with a 9 mm caliber pistol.  At the time of Wilson and Rewis's conduct, Bankston's 11 year-old daughter, Angel Tate ["Angel"], and 12 year-old niece, Candice Pollard ["Candice"], were in the Bankston residence.   Law enforcement officials recovered a .38 caliber bullet from the main power line inside the meter box and a .38 caliber casing from inside the box.  Testimony at trial indicated that the meter box also suffered damage from additional gunshots.  (Doc. No. 7, Exh. D, pg. 3.)   The Court of Criminal Appeals further determined:

Section 13A-11-61(a), Ala. Code 1975, states:

> "No person shall shoot or discharge a firearm, explosive or other weapon which discharges a dangerous projectile into any occupied or unoccupied dwelling or building or railroad locomotive or railroad car, aircraft, automobile, truck or watercraft in this state."

Section 13A-7-1(3), Ala. Code 1975, defines "dwelling" as "[a] building which is used or normally used by a person for sleeping, living or lodging therein." Additionally, we note that § 13A-11-61 does not require proof of specific intent. See Hawkins v. State, 594 So.2d 198 (Ala. Crim. App. 1991).

Rewis argues that "[i]t is clear from the evidence that the intent . . . was to cut the power to the house, not to shoot into or at the house." (Rewis's brief at p. 13). In Sotto v. State, 701 So.2d 309 (Ala. Crim. App. 1997), the appellants argued that because the evidence indicated that they only shot the front porch of the house, it was insufficient to sustain a conviction of shooting into an occupied dwelling. This court held:

> ". . . [I]f it does not matter whether the projectile enters the passenger compartment of an automobile, the same is true as to a dwelling and the living area therein. If the legislature had intended that to sustain a conviction under § 13A-11-61(a) the projectile enter the actual interior of the dwelling it would have specifically stated in the statute. Therefore, by analogy, the state's evidence need not show that the bullet penetrated the actual interior of the dwelling, but only that the shots were fired at and hit the dwelling."

Here, the State's evidence tended to show that Wilson, armed with a pistol, shot at the meter box attached to Bankston's personal dwelling while Rewis fired at a transformer on the power pole in Bankston's front yard. At the time of the shooting, the dwelling was occupied by two children. Physical evidence indicated that several of the projectiles struck the meter box.

> "'A person is legally accountable for the behavior of another constituting a criminal offense, if, with the intent to promote or assist the commission of the offense. . . [h]e aids or abets such other person in committing the offense. . . .' 13A-2-23(2) Code of Alabama 1975. ""Aid and abet "comprehend all assistance rendered by acts of words of encouragement or support or presence, actual or constructive, to render assistance should it

become necessary."'" Gwin v. State, 456 So.2d 845, 851 (Ala. Crim. App. 1984), quoting Jones v. State, 174 Ala. 53, 57, 57 So. 31 (1911).  See also Watkins v. State, 495 So.2d 92 (Ala. Crim. App. 1986).'  Jones v. State, 623 So.2d 389, 391 (Ala. Crim. App. 1993)."

Turner v. State, 674 So.2d 1371, 1375-76 (Ala. Crim. App. 1995) (Emphasis in original).  There was sufficient evidence to convict Rewis of aiding and abetting Wilson.  Therefore, the evidence, as recited above, was sufficient to sustain a verdict finding Rewis guilty of discharging a firearm into an occupied dwelling.  The trial court did not err in denying Rewis's motion for judgment of acquittal on this charge.

(*Id*. at pgs. 3-4.)

Here,  the determination by the Alabama Court of Criminal Appeals that the evidence was sufficient to establish Rewis's guilt of discharging a firearm into an occupied dwelling was consistent with *Jackson* and was not "contrary to" nor an "unreasonable application" of clearly established federal law as determined by the Supreme Court of the United States. *Williams v. Taylor*, *supra*.  Moreover, the state court properly adjudicated this claim based on a reasonable determination of the facts in light of the evidence presented at trial.  *See* 28 U.S.C. § 2254(d)(2).  Accordingly, Rewis  is due no relief on his challenge to the sufficiency of the evidence with regard to this conviction.

  *ii.  The Burglary I  Offense*

Section 13A-7-5, Ala. Code 1975 reads:

(a) A person commits the crime of burglary in the first degree if he knowingly and unlawfully enters or remains unlawfully in a dwelling with intent to commit a crime therein, and, if, in effecting entry or while in [the] dwelling or in immediate flight therefrom, he or another participant in the crime:

(1) Is armed with explosives or a deadly weapon; or

-10-

(2) Causes physical injury to any person who is not a participant in the crime; or
(3) Uses or threatens the immediate use of a dangerous instrument.

The State's evidence showed that on the morning of December 23, 1998, Rewis and his two co-defendants, Pratt and Wilson, decided to ride around and look for places to go racoon hunting.  The three men came upon the Bankston residence.  They drove around to the back of the home at which time Rewis and Wilson got out of Pratt's truck and began looking through the windows of the house.  Rewis had his Jennings 9 mm pistol with him and Wilson had his .38 caliber R&G pistol.  Observing that the house had an alarm system, Rewis and Wilson decided to disrupt the power supply to the home. Wilson shot at the electrical box located on the side of the Bankston home.  Rewis shot at a transformer located on  a power pole in the front yard.  After accomplishing these tasks,  Rewis and Wilson went to the rear of the house, at which point Wilson, using a cinder block, broke off the handle to the storm door and kicked in the back door.  Both Rewis and Wilson then entered the Bankston residence.  (Doc. No. 7, Exh. A Vols. II & III, pgs. 169-177, 189-190.)

As previously noted, two young girls were in the Bankston home at the time Rewis and his co-defendants came on the property.  After hearing noises in the yard, the two girls looked out a window and saw a black pick-up truck and two men prowling around the property.  They noticed a third person sitting in the pick-up truck and because of the individual's long hair, the two girls believed the person to be female.[4]  The girls tried to call

---

[4]Angel testified at trial that she saw two individuals on the property.  One person in the truck and one person beside the truck. (Doc. No. 7, Exh. A Vol. I, pg. 51.)  Her statement given to police right after the incident occurred, however,  indicated that she observed three individuals on the Bankston property

the police, only to find the telephone line dead.  After hearing the sound of several gunshots, Candice and Angel ran to Angel's bedroom and lay on the floor.  When the sound of gunfire ceased, the girls attempted to set off the house alarm but it also was not working.  They proceeded to retrieve a gun from a nightstand in the Bankstons' bedroom.  After hearing Rewis and Wilson breaking in the back door, the two girls returned to Angel's bedroom, locked the door, and hid beside the bed.  The two men began beating on the door to Angel's bedroom door.  Because an alarm had gone off after the back door was broken down, the two men decided to look in another bedroom where they found a rifle in a gun case and a shotgun.  As  Rewis and Wilson left the house with the guns, they also grabbed some CD's and took a marine battery from the back porch.  Pratt took a cast iron pot from the back yard. The men placed the property in the truck and headed back toward Georgia.(Doc. No. 7, Exh. A, Vols. II & III at  pgs. 35-41, 49-52, 175-181.)

After the men left the property, Candice and Angel flagged down a relative who was on his way to the Bankston home because of his concern at hearing pistol shots while hunting near the Bankston residence.  The police were called and a BOLO ["be on the look out"] was issued for three individuals in a small black pick-up truck.  Police officers in Columbus, Georgia, made a traffic stop on a truck matching the description given for the BOLO.  Rewis and his co-defendants were removed from the truck.  Property matching the description of items taken from the Bankston home was retrieved from Pratt's vehicle.  (Doc. No. 7, Exh.

---

two of whom she believed to be male and the other female.  (*Id*. pg. 82.)

A Vol. II , pgs. 59-65,  111-116.)

To establish a prima facie case of burglary in the first degree as to the Bankston residence, the State had to show (1) that Rewis knowingly and unlawfully entered the Bankston house; (2) that Rewis entered the Bankston house with the intent to commit a crime; and (3) that one of the participants was armed with a deadly weapon. *See* § 13A-7-5(a),  Ala. Code  1975. The State met this burden. While Angel and Candice did not actually see Rewis or Wilson inside the house, they did see  two men lurking around the property and the jury could have reasonably inferred from the evidence presented that Rewis and Wilson were the two men who  knowingly and unlawfully entered the Bankston home.  Shortly after the burglary occurred, Rewis and his co-defendants were apprehended in a truck matching the description of the truck and its occupants seen by Candice and Angel at the Bankston residence, and items belonging to Mr. Bankston were  found in the truck in which the three men were apprehended.  To satisfy the elements of burglary in the first degree, it is only necessary that one participant in a burglary be armed. The evidence showed that both Rewis and Wilson were armed while on the Bankston property and/or while fleeing from it.

As noted herein, the standard for assessing a sufficiency of the evidence claim is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at  319.  Although a jury "may not base a verdict on mere speculation," it may permissibly draw a vast range of inferences from the evidence.  *United States v. Long*, 905 F.2d 1572, 1576 ( D.C. Cir.).  No distinction is made between direct and circumstantial

evidence in evaluating the sufficiency of evidence supporting a guilty verdict. *See Holland v. United States*, 348 U.S. 121, 139-40 (1954). Further, to be sufficient, the "evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *United States v. Harrell*, 737 F.2d 971, 979 (11th Cir.1984).

Applying the *Jackson* standard to Rewis's claims, the court finds the evidence sufficient to sustain his conviction for burglary in the first degree. The court has carefully reviewed Petitioner's arguments regarding the sufficiency of the evidence used to convict him of first degree burglary but finds from the record before it that the totality of evidence was sufficient for the jury to find beyond a reasonable doubt that Rewis was guilty of this crime. Because the State fulfilled its burden of establishing a prima facie case of burglary in the first degree under § 13A-7-5(a), Petitioner is not entitled to habeas corpus relief.

*E. Ineffective Assistance of Trial and Appellate Counsel*

In its decision affirming the lower court's denial of Rewis's collateral challenge to his trial and appellate counsels' performance, the Alabama Court of Criminal Appeals applied the holding in *Strickland v. Washington*, 466 U.S. 668 (1984). (Doc. No. 7, Exh. N.) *Strickland* sets forth the clearly established federal law on this issue. Thus, this court will determine whether the state courts' rejection of Petitioner's claims of ineffective assistance of counsel "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The Sixth Amendment right to counsel exists to protect the fundamental right to a fair

trial.  Petitioner must satisfy the requirements of a two-pronged test to prevail on his claims of ineffective assistance of counsel.  First, Petitioner must establish that his attorney's performance "fell below an objective standard of reasonableness."  *Strickland* 466 U.S. at 688.  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  *Id.*  Once this threshold test is met, the petitioner must then show that the deficient performance of his counsel prejudiced his defense.  *Id.* at 687.  To establish prejudice, Petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  Unreliability or unfairness does not result if counsel's ineffectiveness does not deprive the defendant of any substantive or procedural right to which the law entitles him.  *Williams*, 529 U.S. at 393 n. 17.  There is a strong presumption that counsel's performance was reasonable and adequate and great deference is shown to choices dictated by reasonable trial strategy.  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).  Any review of an ineffective assistance of counsel claim is conducted from the perspective of defense counsel based on facts "as they were known to counsel at the time of the representation."  *United States v. Teague*, 953 F.2d 1525, 1535 (11th Cir. 1992).

The state courts did not decide Petitioner's claims of ineffective assistance of counsel "differently than [the Supreme] Court has [in a case based] on a set a of materially indistinguishable facts" nor did the state court apply a rule that contradicts governing federal law.  *Williams*, 362 U.S. at 412.  Consequently, the state appellate court's rejection of the ineffective assistance of counsel claims was not contrary to actual Supreme Court decisions.

-15-

This court must therefore determine whether the Alabama Court of Criminal Appeal's decision to reject the ineffective assistance of counsel claims was an unreasonable application of the *Strickland* standard.

> In determining whether the state court's decision is an unreasonable application of the law set out in [applicable] Supreme Court decisions, we need not decide whether we would have reached the same result as the state court if we had been deciding the issue in the first instance. Instead, we decide only whether the state court's decision of the issue is objectively unreasonably. *See Williams v. Taylor*, 529 U.S. 362, 411, 120 S.Ct. 1495, 1522, 146 L.Ed.2d 389 (2000) ("Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."); *Brown v. Head*, 272 F.3d 1308, [1313] (11th Cir. 2001)("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide.").

*Wright v. Secretary for the Dept. of Corrections*, 278 F.3d 1245, 1256 (11th Cir. 2002).

i. *Ineffective Assistance of Trial Counsel*

Rewis maintains that he received ineffective assistance of trial counsel because counsel intentionally misrepresented him and failed to act in his best interests. He asserts that trial counsel 1) intentionally omitted exculpatory evidence, 2) failed to inform the jury of the true facts of his case which would have resulted in Rewis's acquittal on all charges, 3) failed to contact or call co-defendant Wilson as a defense witness where his testimony would have clashed with the testimony from co-defendant Pratt, 4) failed to confront Detective Raymond Wells with regard to his perjured testimony or his theft of evidence, 5)

failed to strike "obvious adverse jurors," 6) failed to ask questions of witnesses which Rewis prepared and which would have uncovered the truth, 7) failed to confer with Rewis and only went to see him in jail once prior to trial, and 8) failed to raise important issues.

On appeal from the state court's denial of Rewis's Rule 32 petition, the Alabama Court of Criminal Appeals agreed with the lower court's determination that Rewis "'makes only general allegations and has not asserted that the actions of appellate [or trial] counsel have injured him or would likely result in a different outcome in his case. (C. 45.) See Strickland v. Washington, 466 U.S. 668 (1984). . .'"   (Doc. No. 7, Exh. N, pg. 3.)   This ruling by the appellate court was neither "contrary to" nor an "unreasonable application of" Supreme Court precedent.   Rewis's bare allegations regarding trial counsel's allegedly deficient performance either are not supported by the record or are simply insufficient to overcome "the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689.   A "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from the counsel's perspective at the time." *Id*.   Just because Rewis does not agree with the tactics employed by his counsel, does not mean counsel performed incompetently.

Here, the record does not support a conclusion that the errors which Rewis attributes to his trial counsel's performance so undermined the proper functioning of the adversarial process that the trial court cannot be relied upon as having produced a just result in light of all the evidence presented. (*See* Doc. No. 7, Exh. A, Vols. II -III.)   Accordingly, Rewis has

failed to show the harm necessary to his claim of ineffectiveness. *Strickland,* 466 U.S. 668. Thus, the state appellate court's rejection of his ineffective assistance of counsel claim was objectively reasonable. *See Williams v. Taylor, supra.* This decision was, likewise, a reasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). Consequently, Petitioner is not entitled to habeas relief on his claims of ineffective assistance of trial counsel.

### ii. Ineffective Assistance of Appellate Counsel

The test used to evaluate claims of ineffective assistance of trial counsel applies equally to an analysis of claims of ineffective assistance of appellate counsel. *Jackson v. Dugger*, 931 F.2d 712, 715 (11th Cir. 1991). Appellate counsel cannot be deemed ineffective for failing to raise meritless claims on appeal. *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000); *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise non-meritorious issues does not constitute ineffective assistance"). Ineffective assistance of appellate counsel may be shown if a petitioner can "establish ... that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.... Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2nd Cir.1994). However, a criminal petitioner has not necessarily received ineffective assistance when his counsel fails to present every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 752 (1983).

Rewis argues that appellate counsel knew nothing about his case and only presented two claims on appeal.  As with the claims made against his trial counsel, Rewis's claims against his appellate counsel consist of general allegations. Consequently, the court concludes that Rewis has failed to present any evidence that appellate counsel did not adequately represent his interests on appeal.  Because Rewis fails to establish that appellate counsel provided ineffective assistance,  *Strickland*, 466 U.S. at 687-688, the state court's rejection of Petitioner' ineffective assistance of appellate counsel claims shall not be disturbed as it was neither contrary to, nor an unreasonable application of, federal law.  *See Williams v. Taylor, supra.*

F.  The Brady Claim

In his September 19, 2003 response to Respondents' answer, Rewis contends that a *Brady v. Maryland*, 373 U.S. 83 (1963), violation occurred because the State failed to disclose the full nature of the consideration given to co-defendant Pratt in exchange for his testimony in Petitioner's case and that he perjured himself by testifying at Rewis's trial that he received no consideration from the State for his testimony.  Rewis did not raise this claim in his original petition.  Thus, to the extent the September 19 response (Doc. No. 11) may be construed as a motion to amend the petition, the motion shall be granted.

Rewis presented his *Brady* claim on direct appeal.  (Doc. No. 7, Exh. D.) The Alabama Court of Criminal Appeals applied the *Brady* standard in affirming the judgment of the trial court.  (Doc. No. 7, Exh. D.)  *Brady*, *supra*, sets forth the clearly established federal law on this issue.  This court will, therefore, determine whether the state court's

rejection of Rewis's *Brady* claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The appellate court found the following in regard to Rewis's allegation that a *Brady* violation occurred:

> Rewis contends that the trial court erred in denying his motion for a new trial because, he says, the State's failure to disclose the full nature of the consideration given to Christopher Pratt ("Pratt"), a codefendant, in exchange for Pratt's testimony in this case, constituted a violation of Brady v. Maryland, 373 U.S. 83 (1963).
>
> Before trial, Rewis filed a discovery motion and a motion to disclose the nature of any deal offered to Pratt in order to secure his testimony, which were granted by the trial court. Immediately before Pratt testified, the trial court conducted an in-camera hearing, during which defense counsel was allowed to question Pratt about the existence of any agreement or offer of consideration. Pratt denied the existence of an promise of consideration and stated that he was advised by his lawyer that it was in his best interest to testify and to tell the truth. Pratt made the same statements at trial. He was also called to testify at the hearing on Rewis's "Motion for New Trial" regarding Rewis's Brady claim. Pratt stated that, at the time he testified at the trial, he was only told that there was a "possibility" of consideration in exchange for his testimony; therefore, he said, he had made no deal with the State and did not expect to get consideration. (R. 270.) Pratt further testified that, subsequent to Rewis's trial, he pleaded guilty to second degree burglary and the charge of discharging a firearm into an occupied dwelling was dismissed.
>
> In response to Pratt's testimony at the hearing, the prosecutor made the following statement:
>
>> "I would like the record to also reflect that, at pretrial proceedings, counsel for the defendant, Mr. Rewis, was, in fact, told that there was a possibility that Mr. Pratt would be given some type of consideration in return for testifying. That was disclosed well prior to trial."

(R. 273-74.)  In an effort to further rebut Rewis's allegations that a <u>Brady</u> violation had occurred, the prosecutor also called Patrick Miller, Rewis's trial counsel, to testify at the hearing.  The following exchange took place:

> "[PROSECUTOR]: First off, in reference to Mr. Pratt, you were made aware as Rewis's attorney that Pratt was going to testify against Rewis; is that correct?
>
> "[MILLER]: Yes, sir.
>
> "[PROSECUTOR]: And it was your – you were made aware that at the time of the testimony that there was no firm offer to Pratt in return for his testimony?
>
> "[MILLER]: That's correct.
>
> "[PROSECUTOR]: And is it true that, in fact, you confirmed that with Pratt's attorney?
>
> "[MILLER]: Yes, along with Mr. Davis.
>
> "[PROSECUTOR]: And were you aware of that prior to trial?
>
> "[MILLER]: Of course.  I was also aware that after the trial that there would be a deal, and I made that argument to the jury.
>
> "[PROSECUTOR]: And you brought that up to the jury?
>
> "[MILLER]: Yes, sir, and Mr. Davis admitted as much during his closing argument.
>
> "[PROSECUTOR]: So you argued to the jury that Pratt's testimony may have been tainted or motivated by his desire to get a deal?
>
> "[MILLER]: That's correct."

(R. 328-29.)

In order "[t]o prove a <u>Brady</u> violation, [Rewis] must show (1) that the prosecution suppressed evidence, (2) that the evidence was of a character

-21-

favorable to his defense, and (3) that the evidence was material." [citations omitted.]

On appeal, Rewis appears to argue that "the D.A. should have spoken up to the Court and the jury and informed them that Pratt was not telling the truth" when he gave testimony denying that he had reached a deal with the State. (Rewis's brief at pg. 11.) That argument has no merit. Brady requires disclosure. It does no, however, require that the State impeach its own witness, especially when that witness truthfully answered the question that was asked. We find that Rewis's allegation that a Brady violation occurred is not supported by the record. It is clear that Rewis was aware well before the trial that there was a possibility that Pratt might receive consideration in exchange for his testimony. How Rewis used that information to impeach Pratt's credibility was merely a matter of trial strategy. It is also clear that, at the time he testified, Pratt had not received a definite promise of leniency, nor had he reached an agreement with the State regarding that possibility. Because the State did not suppress the nature of the consideration offered to Pratt, we find no Brady violation. Therefore, the trial court did not abuse its discretion in denying Rewis's motion for a new trial on this ground.

(Doc. No. 7, Exh. D, pgs. 1-3.)

In *Brady*, 373 U.S. at 87, the Supreme Court held that "the suppression of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or punishment." The failure of the state to provide exculpatory evidence would result in a constitutional violation and require habeas corpus relief only if the evidence which should have been provided is "material." *United States v. Bagley*, 473 U.S. 667 (1985). Evidence is material, in the constitutional sense, only if there is a reasonable probability that the result of the proceeding would have been different if the evidence had been provided to the defense. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id.* at 682.

Rewis's claim does not rise to the level of a constitutional violation. Although he

couches his claim as a *Brady* violation, the undersigned is persuaded, as was the appellate court, that Rewis's primary issue of concern is his belief that Pratt testified falsely under oath about making a deal with the State in exchange for his testimony. Weighing the credibility of witness testimony, however, is within the province of the jury, and the evidence reflects that counsel pointed out to the jury that Pratt's testimony may have been tainted by the possibility of a deal with the State in exchange for his testimony. *See U.S. v. Scheffer*, 523 U.S. 303, 313 (1998) ("A fundamental premise of our criminal trial system is that 'the *jury* is the lie detector.' Determining the weight and credibility of witness testimony, therefore, has long been held to be the 'part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.'") (citations omitted) (emphasis in original). It is clear from the record, however, that the State did not suppress the fact that Pratt might receive consideration in exchange for his trial testimony and that both counsel and Rewis were aware of this prior to trial. (*See* Doc. No. 7, Exh. A. pgs. 273-74, 328-29.) Therefore, no *Brady* violation occurred. Because the Court of Criminal Appeals' decision on this issue was neither contrary to, nor an unreasonable application of, federal law, nor an unreasonable determination in light of the facts presented, Petitioner is not entitled to habeas relief on this claim.

## G. Actual Innocence

Rewis maintains that he is actually innocent of the crimes for which he was convicted. He asserts that if all the evidence had been properly presented by trial and/or appellate

counsel, he would not have been convicted.

In *Schlup v. Delo*, 513 U.S. 298 (1995), the Supreme Court held:

> To be credible, . . . a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

*Id*. at 324.

Here, the court finds that Petitioner presents only conclusory allegations that he is actually innocent, arguing that the evidence was legally insufficient to support his convictions. Notwithstanding his assertion of actual innocence, Rewis has submitted no "new reliable evidence" to support his claims nor has he suggested that any such evidence exists to establish his actual innocence so as to meet the standard set forth by *Schlup*. His mere contention that he is actually innocent of the crimes of his convictions is not supported by the record or any credible evidence. The court, therefore, concludes that Petitioner has failed to demonstrate his actual innocence.

## H. Procedural Default

Respondents maintain that the following claims presented by Petitioner are procedurally defaulted because he failed to present them properly in the state courts: 1) Officer Wells stole live rounds of ammunition from the evidence seized during Petitioner's arrest; 2) Officer Wells gave perjured testimony at Petitioner's preliminary hearing; 3) Petitioner's arrest was illegal; 4) Petitioner's sentence is excessive; 5) Petitioner's sentence as an accomplice exceeded and was disproportionate to the sentence of a co-defendant who

-24-

was the actual shooter; 6) Alabama's complicity statute was improperly used to name him as an accomplice to the crime; and 7) the trial court violated Petitioner's Eighth Amendment right to be free from excessive fines and sentences.   *See Harris*, 489 U.S. 255; *Atkins*, 965 F.2d at 956; *Teague*, 489 U.S. 288.

This court may reach the merits of a petitioner's procedurally defaulted claims only if the petitioner shows either 1) cause for the procedural default and actual prejudice arising out of the violation of federal law, *Coleman v. Thompson*, 501 U.S. 722 (1991), or 2) a resulting fundamental miscarriage of justice if the federal court does not consider the merits of the claims.  *Schlup v. Delo*, 513 U.S. at 320.   Rewis asserts as cause for his default  trial and appellate counsel's ineffectiveness for failing to raise the defaulted claims at trial and/or on appeal.   (Doc. Nos. 1, 11, 17.)

In order to demonstrate cause and prejudice based on a claim of ineffective assistance, a petitioner must show that counsel's performance was "so ineffective as to violate the Federal Constitution." *Edwards v. Carpenter,* 529 U.S.  446, 451 (2000). In other words, a petitioner seeking to show ineffective assistance as the cause of a default must prove that his counsel was ineffective under the standard set forth in  *Strickland*, 466 U.S. 684. If Petitioner cannot prevail on a separate ineffective assistance of counsel claim, then he cannot prevail on an argument that ineffective assistance caused the procedural default. *See id*.

From a review of the record in this case, the undersigned finds that Rewis has not demonstrated that the actions of trial or appellate counsel, in failing to raise at trial or on appeal  those claims now considered defaulted, unduly prejudiced him.   Alternatively,

Rewis's claims concerning counsels' conduct are without merit.  (*See* Doc. No. 7, Exh. A, Vols. II-IV.)

Rewis asserts that Alabama's complicity statute was improperly used to name him as an accomplice.  This allegation essentially re-packages Rewis's challenge to the sufficiency of the evidence with respect to the firearm offense and, as discussed, *infra*, appellate counsel did present this sufficiency of the evidence argument on appeal.  Also, at the close of all the evidence, trial counsel requested a judgment of acquittal on the ground that the State's evidence failed to prove a prima facie case as to either charge against Rewis. (*Id.* Vol. III, pgs. 242-243.)  With regard to Rewis's allegation of an illegal arrest, appellate counsel did present this matter at the hearing on Petitioner's motion for new trial which was subsequently denied.[5]  (*Id.*, pgs. 274-279.)  As for the decision not to question Officer Wells about the alleged missing evidence and/or his perjured testimony, that is within the realm of trial strategy, an area in which "Monday morning quarterbacking" is discouraged.  (*Id.* at pgs. 288-300, Vol. IV at pgs. 360-365.); *Stamper v. Muncie,* 944 F.2d 170, 178 (4th Cir.1991); *Strickland*, 466 U.S. at 688-89 (no hard and  fast rules for defense counsel's conduct exist; such rules would "restrict the wide latitude counsel must have in making tactical decisions").  "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is the defendant must overcome the

_____

[5]Rewis was arrested in Georgia because he and his co-defendants crossed over the state line before Alabama law enforcement officials could effect a traffic stop.  He was then extradited back to Alabama to face the burglary and firearm charges.  At the hearing on the motion for new trial, the court stated that Rewis should have raised the issue of his alleged illegal arrest in Georgia after his extradition to Alabama and that the issue had become moot.  (Doc. No. 7, Exh. A, Vol. III pgs. 279-283.)

presumption that ... the challenged action "might be considered sound trial strategy.'" *Id.* at 689. Moreover, in his Rule 32 petition, Rewis's challenge to Officer Wells' conduct was presented in the context of an ineffective assistance of counsel claim. (*See* Doc. No. 7, Exh. I.) As discussed previously, the Court of Criminal Appeals affirmed the Rule 32 court's determination that Rewis failed to demonstrate the ineffectiveness of either trial or appellate counsel's performance. (*Id*. at Exh. N.) Finally, with regard to Rewis's claims regarding the length of his sentence, appellate counsel is not ineffective for raising non-meritorious issues. Rewis's arguments about the term of his sentences only reflect that his co-defendants received shorter sentences for the burglary and/or firearm offenses, not that his sentences were disproportionate to the crimes. *See Harmelin v. Michigan,* 501 U.S. 957, 994-96, 1001 (1991) (finding no violation of the Eighth Amendment's proportionality requirement with respect to a mandatory life sentence imposed on a first-time criminal convicted of possessing 650 grams of cocaine; the disproportionality element to the Eighth Amendment, "forbids only extreme sentences that are 'grossly disproportionate' to the crime." ); *cf. United States ex rel. Sluder v. Brantley,* 454 F.2d 1266, 1269 (7th Cir. 1972) (if the sentence imposed by a state court is within the range established by state law, "its severity is not sufficient grounds for relief on federal habeas corpus.").

Here, Rewis's assertions regarding trial and appellate counsel's conduct are either without merit or fail to demonstrate either that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment", or that he was prejudiced by his counsel's performance to the extent that his convictions are

unreliable. *Id.* at 694.  Therefore, Petitioner's failure to present in the state court the issues now considered defaulted in this court cannot be excused, and the procedural default doctrine applies.

Petitioner has demonstrated neither cause for his failure to present his defaulted habeas claims to the state courts in compliance with applicable procedural rules nor the existence of actual prejudice emanating from infringement of federal law.  The court understands Rewis to assert that, nevertheless, this court may still reach the merits of his defaulted claims in order to prevent a fundamental miscarriage of justice because he is actually innocent.

The miscarriage of justice standard is directly linked to innocence.  *Schlup*, 513 U.S. at 321.  Innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted. *Id.* at 315.  This exception applies where a petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Schulp v. Delo*, *supra*.  "To establish actual innocence, [a] petitioner must demonstrate that . . . 'it is more likely than not that no reasonable juror would have convicted him.'" *Bousley  v. United States,* 523 U.S. 614, 623 (1998) (quoting *Schlup*, 513 U.S. at 327-328).  "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency."  *Id.* at 623-624 (*citing Sawyer v. Whitley*, 505 U.S. 333, 339 (1992))."

Here, Rewis  must identify evidence that affirmatively demonstrates his innocence.

*See Schlup,* 513 U.S. at 327. He is required to provide evidence that more than simply "undermine[s] the finding of guilt against" him. *Ballinger v. Kerby*, 3 F.3d 1371, 1375 (10th Cir. 1993). After carefully reviewing the record, the undersigned finds that Rewis has not presented the court with evidence of actual innocence establishing that "it is more likely than not that no reasonable juror would have convicted him." *Schlup,* 513 U.S. at 327. Consequently, Rewis fails to make the requisite showing of actual innocence. He has presented no evidence nor suggested that any exists which could satisfy the standard set forth in *Schlup*. Consequently, Petitioner's procedurally defaulted claims are foreclosed from federal habeas review.

### III.  CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that the petition for habeas corpus relief filed by Nathan Rewis be DENIED and that this case be DISMISSED with prejudice.

To the extent Petitioner's response filed September 19, 2003 may also be construed as a motion to amend the petition, it is

ORDERED that the motion (Doc. No. 11) is GRANTED.

It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before February 15, 2006. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are

advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 2nd day of February, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE